**UNITED STATES, Appellee,**

v.

**John PAPPA and Calvin Hennigar, Defendants–Appellants.**

Nos. 99–1730, 00–1678.

United States Court of Appeals, Second Circuit.

March 14, 2002.

Diarmuid White; Brendan White, on the brief, New York, NY, for Appellant Pappa.

Michael Lumer; Kaiser, Saurborn & Mair, PC, on the brief, New York, NY, for Appellant Hennigar.

Amy Walsh, Assistant United States Attorney; Loretta E. Lynch, United States Attorney for the Eastern District of New York, Jo Ann M. Navickas, Assistant United States Attorney, Stephen D. Kelley, Special Assistant United States Attorney, of counsel, Brooklyn, NY, for Appellee.

Present WALKER, Chief Judge, CABRANES and STRAUB, Circuit Judges.

### SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of said district court be and it hereby is **AFFIRMED.**

Defendants-appellants Calvin Hennigar and John Pappa appeal their convictions, following a jury trial, on multiple charges arising out of various criminal activities connected with the Colombo organized crime family. Both Pappa and Hennigar were convicted of racketeering and conspiracy to racketeer, in violation of 18 U.S.C. §§ 1962(c) and (d) ("RICO"), and narcotics distribution and conspiracy to distribute narcotics, in violation of 21 U.S.C. §§ 841(b)(1)(A), (C), and (D). In addition, Pappa was convicted of two counts each of murder and conspiracy to murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and (a)(5), and two counts of possession and use of a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c)(1).

■ Pappa was sentenced to six concurrent terms of life imprisonment for the RICO, narcotics, and murder counts, ten-year terms for the two murder conspiracy counts, and consecutive five-year and 20–year terms on the two firearms counts. Hennigar was sentenced to concurrent life terms on the RICO counts and concurrent 120–month terms on the narcotics counts. The government presented evidence at trial that Pappa was an associate of the Curcio crew, a part of the Colombo organized crime family, and that he engaged in several murders to advance or protect his position in the Colombo family. The evidence presented against Hennigar established that he was involved in at least one murder with Pappa and that he distributed narcotics with Pappa.

On appeal, the appellants argue that (1) the imposition of life sentences for Pappa's narcotics convictions violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because the issue of drug quantity was not submitted to the jury; (2) the government was required to provide corroboration for accomplice testimony introduced concerning the New York state violations that constituted predicate

acts underlying Pappa's RICO and murder convictions; (3) the district court erred in not holding a hearing pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), before disqualifying Pappa's Federal Defender counsel based on potential conflicts arising from the representations of and interactions with a potential prosecution witness by the Federal Defender's office; (4) the district court committed prejudicial error by allowing the government to introduce at trial evidence of Pappa's "Death Before Dishonor" tattoo; (5) there was insufficient evidence to convict Hennigar of racketeering and racketeering conspiracy; and (6) the district court erred in permitting the prosecution to strike a particular prospective juror for cause. As discussed below, we hold that all of appellants' claims lack merit.

Pappa was sentenced to two terms of life imprisonment on his convictions for narcotics distribution and conspiracy to distribute narcotics, in violation of 21 U.S.C. §§ 841(b)(1)(A), (C), and (D) based in part on the district court's own factual findings concerning drug quantity. As we recently held *in banc*, under *Apprendi*, "it is error for a court to 'enhance' a defendant's sentence above [the statutory maximum applicable for an indeterminate quantity of drugs, pursuant to 21 U.S.C. § 841(b)(1)(C),] if the Government has not charged drug quantity in the indictment and proved it to a jury beyond a reasonable doubt," *United States v. Thomas*, 274 F.3d 655, 663 (2d Cir.2001). Here, the quantity of narcotics involved in the offenses charged was not alleged in the indictment and was not submitted to the jury for determination. Thus, the district court's imposition of life sentences for Pappa's narcotics convictions based on its own factual findings as to drug quantity was error. In light of the concurrent life sentences imposed on Pappa for his RICO and murder convictions, however, any error

with respect to his sentence on the narcotics convictions was harmless. *See United States v. Rivera*, 282 F.3d 74, 77–78 (2d Cir.2002) (per curiam) (holding that because defendant was "properly sentenced to life imprisonment on the CCE count, a[n erroneous] concurrent sentence on other counts is irrelevant to the time he will serve in prison, and we can think of no collateral consequences ... that would justify vacating" the erroneous sentence). Accordingly, we see no basis for disturbing Pappa's sentence.

■ Pappa argues that his RICO and murder convictions must be reversed because the New York state violations used as predicate acts to support these convictions were established solely by means of uncorroborated accomplice testimony, which is prohibited by New York law. This claim fails because, as we have repeatedly held, New York's accomplice-corroboration rule does not apply with respect to predicate acts for RICO prosecutions. *See, e.g., United States v. Coonan*, 938 F.2d 1553, 1564 (2d Cir.1991); *United States v. Paone*, 782 F.2d 386, 393–94 (2d Cir.1986). The rationale for not incorporating the New York rule into RICO prosecutions is that the accomplice-corroboration rule is procedural, rather than an element of the offense. *See Paone*, 782 F.2d at 393; *see also United States v. Carrillo*, 229 F.3d 177, 183 (2d Cir.), *cert. denied*, 531 U.S. 1026, 121 S.Ct. 598, 148 L.Ed.2d 511 (2000). New York law supports this view. *See People v. Spiegel*, 60 A.D.2d 210, 400 N.Y.S.2d 73, 75 (1977) ("the requirement of corroboration for certain crimes does not constitute an element of the crime itself but is, rather, an additional protective procedural device"), *aff'd* 48 N.Y.2d 647, 421 N.Y.S.2d 190, 396 N.E.2d 472 (1979).

Pappa's reliance on *Carmell v. Texas*, 529 U.S. 513, 518, 545, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000), for the proposition that corroboration requirements constitute sufficiency-of-the-evidence rules and, therefore, are required for conviction is misplaced. *Carmell*, which involved Texas law, does not alter the analysis here because Texas treats its corroboration rule as a sufficiency-of-the-evidence rule, *see id.* at 517–18, whereas here—as discussed above—New York treats its corroboration rule as procedural.

Pappa next argues that he was denied his Sixth Amendment right to counsel when the district court disqualified Michael Padden, his Federal Defender attorney, without first holding a hearing pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir.1982). We disagree. At a pretrial status conference, Padden and Attorney–in–Charge Thomas Concannen, Padden's supervisor, alerted the court to a potential conflict of interest based on the fact that another Federal Defender attorney had been briefly assigned to a potential government witness and Federal Defender paralegals and interns had been exposed to that witness and to relevant discovery files. After hearing the preliminary details about the conflict, the district court adjourned the matter to a subsequent status conference. At both conferences, Concannen made statements to the effect that, although attorney-client privilege precluded him from divulging all of the details of the conflicts, it was his belief that the conflicts were severe and warranted disqualification of the Federal Defenders. The district court determined that because Concannen's explanation of the conflict indicated there was "more here than meets the eye" and because Concannen was unable to disclose what the potential conflicts were, Pappa did not have enough information upon which to give a knowing and intelligent waiver. Accordingly, the district court judge—who had previously declared his reluctance to disqualify Pappa's counsel—decided that the "prudent" thing would be to disqualify Padden.

■ We find that the district court did not abuse its discretion in disqualifying Pappa's attorney and there was no error in the district court's failure to conduct a *Curcio* hearing. When a trial court is alerted to the possibility of a conflict of interest, it has a "threshold obligation to determine whether the attorney has an actual conflict, a potential conflict, or no conflict. In fulfilling this initial obligation to inquire into the existence of a conflict of interest, the trial court may rely on counsel's representations." *See United States v. Kliti*, 156 F.3d 150, 153 (2d Cir.1998) (internal citations omitted). The district court's numerous colloquies with counsel satisfied its obligation to make this initial inquiry, which is distinct from a *Curcio* hearing. *See United States v. Levy*, 25 F.3d 146, 152 (2d Cir.1994). The district court's obligations after engaging in this initial inquiry depend on the nature of the conflict revealed. "If the conflict is so severe that no rational defendant would waive it, the court must disqualify the attorney." *Kliti*, 156 F.3d at 153. Only if a lesser conflict is disclosed is the district court obligated to conduct a *Curcio* hearing to determine whether the defendant will knowingly and intelligently waive his right to conflict-free representation. *See id.; United States v. Leslie*, 103 F.3d 1093, 1098 (2d Cir.1997). We find no error in the district court's decision to disqualify Padden without holding a *Curcio* hearing, given the fact that Concannen, the official attorney in charge of Pappa's case—and the only attorney who knew all of the facts—thought Padden should be disqualified and the district court's conclusion that because of Concannen's obligations, he

would be unable to provide sufficient information to allow Pappa to make a knowing and intelligent waiver. Accordingly, we reject Pappa's Sixth Amendment challenge.

We have carefully considered appellants' remaining claims and find them to lack merit. Accordingly, for the reasons set forth above, the judgment of the district court is hereby AFFIRMED.